# EXHIBIT A

Ballard Spahr LLP

*Lane Powell has combined with Ballard Spahr.*

1600 A Street, Suite 304
Anchorage, AK 99501-5148
TEL 907.277.9511
FAX 907.276.2631
www.ballardspahr.com

Michael B. Baylous
907.264.3303
baylousm@ballardspahr.com

December 29, 2025

**VIA ELECTRONIC MAIL**

John Casperson
Holmes, Weddle & Barcott, PC
3101 Western Ave, Ste 500
Seattle, WA 98121
jcasperson@hwb-law.com

Re: Paradigm's Noncompliance with Lease

Dear John:

We write on behalf of Matson Navigation Company of Alaska, LLC ("Matson") to address Paradigm Marine, LLC's ("Paradigm") failure to comply with the use restrictions of the November 1, 2020 Lease Agreement (the "Lease") for the Womens Bay Terminal (the "Terminal"), which provides:

> The Premises may be used for [Paradigm's] Oil Spill Response Operations, Salvage and Marine Firefighting business, related to the prevention, control, containment and cleanup of oil or petroleum, including storage and maintenance of related equipment, supplies and devises, moorage and operation of related vessels and barges, training and exercises, coordinating response operations, and other activities related to such purposes.

Lease § 5.1. Paradigm "agree[ed] to restrict its use to such purpose and not to use or permit the use of the Premises for any other purpose, except with [Matson's] prior written consent." *Id*.

Matson has previously warned Paradigm that allowing the United States Coast Guard (the "Coast Guard") to use of the Terminal as a temporary base without Matson's consent would violate the Lease. Matson has also previously warned Paradigm that its movement of cargo unrelated to the permissible uses outlined in the Lease or movement of cargo for third parties would violate the Lease. Matson understands that Paradigm

intends to allow the Coast Guard to use the Terminal without Matson's consent and continues to transport prohibited cargo, despite these warnings.

**A. Coast Guard Activity at the Terminal.**

Matson previously advised that it was willing to consent to the Coast Guard's proposed use of the Terminal if International Longshore and Warehouse Union ("ILWU") labor is used to handle lines and stores for Coast Guard vessels moored at the Terminal, which the Coast Guard indicated it would be willing to do

The Coast Guard informed Matson that it contemplated two separate agreements with Paradigm: (1) an agreement covering moorage and utilities (e.g., electricity, water, and sewage) for fast response cutters (and possibly other smaller vessels) at barges spudded to the seafloor north of the Terminal (the "Barge Moorage") and (2) an agreement covering moorage and utilities for the Alex Haley (and possibly other larger vessels) to the quay wall of the Terminal (the "Quay Wall Moorage").

Matson, the ILWU, and the Coast Guard reached a tentative agreement regarding labor for Coast Guard activities at the Terminal. The Coast Guard would engage ILWU labor—through Matson—to handle lines and stores for Quay Wall Moorage. For Barge Moorage operations, Coast Guard personnel would provide support services directly, including line handling and movement of stores

On March 7, 2025, Matson informed Paradigm that it was willing to consent to the Coast Guard's use of the Terminal under contract with Paradigm, subject to finalizing terms related to labor and other matters implicated by Coast Guard activities at the Terminal.

On March 8, 2025, Paradigm provided a copy of a draft Moorage Agreement addressing the Barge Moorage and improvements at the Terminal.

On March 13, 2025, Matson emailed its proposed revisions to the Moorage Agreement and a draft Consent Agreement to Paradigm and the Coast Guard. Paradigm did not respond to Matson.

Thereafter, Matson learned from Chris Coutu that Paradigm and the Coast Guard intended to execute some moorage/lease agreement related to the Terminal without input or consent of Matson. Matson understands that that agreement would allow the Barge Moorage discussed above and that it would require Paradigm to make certain facility improvements. As Matson previously advised, such activities – if taken without Matson's consent – would violate Sections 5 and 11.1 of the Lease, placing Paradigm

in default. Matson understands that the Coast Guard has not yet moored vessels at the Terminal nor has Paradigm completed facility improvements. Matson believes that executing the previously proposed Consent Agreement would likely resolve issues between Paradigm and Matson regarding Coast Guard activities at the Terminal.

**B. Paradigm Cargo Transportation.**

In December 2024, after it learned that Paradigm transported cargo through the Terminal that was not related to oil spill preparedness and response activities, including a "Kenworth Tractor" and a "SR 119 Rocket Motor in Container (Inert)," Matson advised Paradigm that movement of such cargo violated the Lease.

Please confirm that Paradigm has not and will not transport any further third-party cargo without Matson's written consent.

Matson reserves all rights and remedies available under the Lease and applicable law, including its right to seek eviction of Paradigm.

Best Regards,

BALLARD SPAHR LLP

Michael B. Baylous