# EXHIBIT F

# U. S. GOVERNMENT MOORAGE AGREEMENT

| DATE OF MOORAGE AGREEMENT | MOORAGE AGREEMENT NO. | |
|---|---|---|
| ~~3/14/2025~~ 3/21/2025 | HSCG89-24-1-0061 | RPUID |

**PURPOSE.** The United States Coast Guard, among other things, has, as one of its missions, marine environmental protection. The U.S. Coast Guard controls and directs oil spill prevention and response activities and conducts readiness drills with industry participants. The U.S. Coast Guard also renders aid to distressed persons, vessels, and aircraft on and under the Northern Pacific Ocean, including the waters in and around Kodiak, Alaska. It is necessary therefore that the U.S. Coast Guard base a cutter or patrol boat or other vessels as appropriate in Kodiak. It is for this purpose that the U.S. Coast Guard seeks uninterrupted and exclusive use of the moorage and dock space at Kodiak, Alaska. Pursuant to specific Congressional appropriations and 14 USC 501 (e), the statutory authority to enter into a moorage agreement for property, the U.S. Coast Guard, hereafter called the GOVERNMENT, is entering into a moorage agreement with Paradigm Marine, LLC, hereinafter called Paradigm, with respect to Paradigm's facilities at Women's Bay Terminal ("Paradigm's property").

**THEREFORE THIS MOORAGE AGREEMENT**, made and entered into this date by and between Paradigm Marine, LLC, a Limited Liability Company organized and existing under the laws of the State of Florida whose address is 7205 W. Rezanof, Kodiak, Alaska 99615, and the Commanding Officer, U.S. Coast Guard, Civil Engineering Unit, Juneau, 709 W. 9th St. Suite 817, Juneau, AK 99801, on behalf of the **UNITED STATES OF AMERICA,** hereinafter called the ("Government" or
"CG").

**WITNESSETH:** The parties hereto for the considerations hereinafter mentioned, covenant and agree as follows:

1. Paradigm hereby agrees to provide the following to the Government:
   Exclusive, dedicated use of moorage and dock space for the following vessels:
   - Three (3) Fast Response Cutters (FRC), each requiring 175 LF of moorage; total FRC moorage is 525 LF.
   - One (1) SPC-TB requiring 48 LF of moorage.
   - Total dedicated moorage space for thee (3) FRCs and one (1) SPC-TB is 573 LF.
   - With prior confirmation with the Coast Guard to ensure no conflict with Government vessels, Paradigm may utilize any moorage and dock space for other purposes and allow its use, without utilities, by other tenants when not required by the Government, which shall in all instances and at all times, have first priority use of the moorage and dock space as provided in this moorage agreement. This provision may be rescinded by the Coast Guard should moorage space be delayed or limited due to Paradigm's or its Tenants' use. If moorage space is utilized by Paradigm the CG will have the option to receive credit equivalent to the agreements current daily rate.

2. **TO HAVE AND TO HOLD** the said premises with their appurtenances for the term beginning on the first day after execution of this moorage agreement for 12 months, subject to termination and renewal rights as may be hereinafter set forth. Amount will be prorated based on the total daily rate. Government is responsible for inspecting the moorage and dock space being provided to determine safety and suitability for its vessels, pursuant to the terms of this moorage agreement, without any representations or warranties by Paradigm, express or implied, other than set out in this moorage agreement. Maintaining the facility is the responsibility of Paradigm.

3. The Government shall pay Paradigm moorage and dock space rent of $2,005.50 per day for a total of $732,007.56 per year which will be paid monthly at $61,000.63 ("Rent"). The execution of this moorage agreement will be the start date, unless terminated under section 4 below. Rent for a lesser period shall be prorated. Paradigm shall invoice for Rent on the first of each month, with payment due by the first of the following month. Electronic (ACH) rent payments shall be made to Paradigm as explained in paragraph 29.

4. The Government may terminate this moorage agreement, at any time without cause and without cost, by giving at least ninety (90) days advance written notification to Paradigm. Said notice shall be computed commencing with the day after the date of mailing. No Rent shall accrue after the effective date of termination.

5. This moorage agreement may be extended at the option of the Government for three (3) successive one (1) year option periods, starting on anniversary of the execution of the original agreement, provided adequate funds are appropriated annually by Congress and provided notice is given in writing to Paradigm at least sixty (60) days before the end of the original moorage agreement term or any extension term (Notice shall be computed with the day after the date of mailing). The monthly rent amount and all other terms and conditions of this moorage agreement shall remain the same during any extension.

6. Paradigm shall furnish to the Government as part of the rental consideration the following:

a. The right of ingress and egress over Paradigm's property for access to the moorage space.

b. Paradigm shall notify the Government, in writing, within ninety (90) days of any transfer of ownership of the described moorage and dock space.

c. Paradigm will notify the Government, in writing, within thirty (30) days of any change of payment, mailing address or ACH payments.

d. Paradigm shall maintain the moorage and dock space being rented in good repair and tenantable condition, except in the case of damage arising from the act or the negligence of the Government's agents or employees, for which the Government shall be responsible. The Government shall not use, hire, contract with or allow any third-party labor or service providers to enter upon or cross any of Paradigm's property unless entirely performed upon the vessels and not upon any part of Paradigm's property, including, without limitation, vessels' lines, cargo, stores, or security. Paradigm shall be allowed access to the moorage and dock space being rented for purposes of inspection, maintenance and repair after notice is provided to the Government and the Government approves of anticipated activities.

e. Paradigm shall ensure a moorage water depth of 18 FT is maintained for the maneuvering and mooring of the three (3) FRCs, unless acts of God, severe weather or other events or circumstances beyond Paradigm's reasonable ability to control prevent or delay the same; in such an event, Paradigm will use due diligence to re-establish the depth as soon as practicable. If moorage and/or dock space is unusable for the intended purpose of this, rent payments shall not be due to Paradigm until space is suitable, consistent with this moorage agreement. Untenantable moorage and dock space shall be credited to the Government at the rate of $3.50/day/foot. Paradigm shall have 30 days to make the moorage and dock space tenable.

f. Paradigm shall ensure adequate tie downs for the berthing of each vessel.

In addition, Paradigm shall provide the Government with the following:

h. Provide potable water delivery to cutter shoreties; 1.5 IN waterline.
i. Provide electrical services to cutter shoreties utilizing the CG provided portable isolation transformers.
j. Provide one (1) 30A/120V electric shoretie for the 38 FT SPC-TB.
k. Provide four (4) 4-YD dumpsters, serviced twice weekly. Trash services will be $6,371 per month; annual cost of $76,452.
l. Provide sewage offload services to meet all vessel needs.
    - Current daily sewage estimate is: 175 gal/day for each FRC
    - Total sewage offload cost will be $1,250 per 1,000 gallons offloaded which includes use of two (2) 5,000 GAL tanks with chassis on the pier for shoretie connection. Charges will be invoiced to the Coast Guard and processed and paid separately through Base Kodiak, not as part of this moorage agreement.
m. Provide fendering services for three (3) FRCs.
    - Five (5) 3 FT x 8 FT closed cell foam filled fenders at a 20 FT spacing along EACH of the three (3) FRC berths, centered amidships along each berth. Paradigm anticipates small smooth sided fenders.
    - Paradigm will maintain these fenders as part of the overall moorage agreement.
    - FRC fendering and associated maintenance will be $50/day/fender for $750.00 per day; annual cost of $273,750.
    - Payment for fendering will be included with the monthly moorage rent payment.

Paradigm shall make additional improvements as discussed in section 15 below as a part of the moorage agreement.

7. OWNERSHIP OF IMPROVEMENTS: It is understood and agreed that the electrical portable isolation transformers provided by the GOVERNMENT as Government Furnished Equipment (GFE) belongs to the GOVERNMENT. The Government shall remove the same at its expense upon any termination or expiration of the moorage agreement. The Government will make all reasonable efforts to return Paradigm's property in similar good order and condition upon termination or expiration of the agreement.

8. UTILITIES: Paradigm shall supply electrical shore tie services for this moorage agreement. Cost of utilities shall be reimbursed by the Government via separate meter. Paradigm shall invoice Base Kodiak for electrical services on the first of each month, with payment due by the first of the following month. Paradigm does not guarantee the continuity of any electrical or other services, nor their characteristics or compatibility with the Government's vessels or other equipment/property. Paradigm specifically disclaims any liability which may arise from electrical service, including electrolytic action on the vessel or other equipment/property of the Government.

9. SUCCESSORS BOUND: The agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, administrators, successors, and assigns.

10. SUBLETTING/ASSIGNMENT: The Government may not sublet or assign the moorage and dock space being rented without the prior written consent of Paradigm.

11. ENVIRONMENTAL PROTECTION: The Government is limited by Federal Law as to the assumption of liability for its acts or omissions. Within its legal limitations and appropriations, the Government agrees to the following: The Government may not unlawfully pollute the air, ground or water, nor create a public nuisance. The Government shall, at no cost to Paradigm, promptly comply with all applicable Federal, state, and local laws, regulations, and directives regulating the release/discharge of hazardous materials into and/or the quality of the environment, including any land, water, buildings, facilities or structures. This does not affect the Government's right to contest the validity of such laws, regulations or directives or to try to enjoin their applicability. The Government shall use all required means to protect the environment and natural resources from any damage arising from the Government's use of the facility and activities incident to its use. If any damage results to the environment or natural resources because of unlawful actions, the Government shall restore the environment or damaged resources to its condition prior to such damage, at no cost to Paradigm. The Government agrees to comply with all applicable federal, state and local environmental laws and regulations, including, but not limited to, those laws concerning any petroleum products, toxic substances, medical wastes and hazardous materials, substances or wastes. Paradigm agrees to comply with, and is currently in compliance with, all applicable federal, state and local environmental laws and regulations, including, but not limited to, stormwater management, hazardous materials, toxic substances, and solid waste handling permits.

12. ANTI-DEFICIENCY ACT (31 U.S.C. §1341 as amended): Nothing in this moorage agreement shall constitute an obligation of funds of the United States in advance of appropriation thereof.

13. INDEMNIFICATION: The Government, in the manner and to the extent provided by the Federal Tort Claims Act (28 U.S.C. §2671-2680) shall be liable for claims for all losses, damages, liabilities or cost and expenses, including but not limited to fire damage, loss of property, personal injury or death, caused by the acts or omissions of the Government, its officers, invitees, employees and agents in the use of the moorage and dock space as described in this moorage agreement.

14. INSURANCE: The Government shall be responsible for any loss or damage to the vessels during the moorage agreement, except to the extent caused by the negligence or other legal fault of Paradigm or its other tenants. The Government is a self-insured entity and as such is not required to provide Paradigm with any certificate of insurance or notice of renewal, termination, cancellation, expiration or alteration of insurance policy.

15. TENANT IMPROVEMENTS: The following tenant improvements (TI) are required and will be completed by Paradigm and paid for by the Government, in addition to Rent. Paradigm will provide two estimates for any subcontracted work to ensure work remains within, or under budget.

a. Electrical services: All necessary electrical improvements for CG operational requirements for three (3) FRCs with provided GFE transformers shall be completed by Paradigm for not more than $750,000.

   Payments to Paradigm for TI shall be as follows:

   1. Design, engineering and permitting: 25% (up to $187,500) will be paid to Paradigm upon engagement of engineer(s) and submittal of complete design, engineering and permitting applications for CG review and approval.

2. CG approval of designs and engineering and permitting: 25% (up to $187,500) will be paid to Paradigm after the CG approves of the design, engineering and permitting applications.
3. Procurement and equipment: 25% (up to $187,500) will be paid to Paradigm after all equipment and necessary equipment are delivered to the installation site.
4. Completion: 25% (up to $187,500) will be paid to Paradigm upon completion of the project and approval by the CG.
5. If TI's are not completed within 60 days of Paradigm's receipt of all required parts and materials the government may withhold TI and rent payments until satisfactory completion.

b. Moorage installation/upgrades: All necessary improvements to make two barges operational for mooring and dock space for all CG Vessels and deck fittings for fender installation shall be completed by Paradigm for not more than $1,200,000, invoiced upon completion and to be paid by the Government within thirty (30) days from date of invoice.

c. Water shore tie installation: All necessary improvements to provide potable water services shall be completed by Paradigm for not more than $10,000, invoiced upon completion and to be paid by the Government within thirty (30) days from date of invoice.

Upon execution of the contract, Paradigm will use all commercially reasonable efforts to provide electrical shore ties using the CG furnished portable isolation transformers using services of a professionally licensed electrical engineer and meeting CG requirements. Paradigm will strive for delivery of completed shore ties by 1 April 2025 but can make no guarantee based on availability of subcontractors, technical complications, or material availability.

TI Costs: If the CG adds specifications or changes to the TI which were not contemplated within the approved design, Paradigm may seek an increase in funding provided that a clear explanation for the increase above the current costs is provided. Any increase in approved tenant improvement will require appropriations and approval by the Real Estate Contracting Officer.

TOTAL ESTIMATED COST: $1,960,000,

16. TOTAL COST BREAKDOWN (ESTIMATES):

| | **Moorage** | **Fenders** | **Trash** | **Total** |
|---|---|---|---|---|
| **Monthly** | $61,000.63 | $22,812.50 | $6,371.00 | $90,184.13 |
| **Annual** | $732,007.56 | $273,750.00 | $76,452.00 | $1,082,209.56 |

| | **Start** | **End** | **Months** | **Rent** | **TI** | **Annual Total** |
|---|---|---|---|---|---|---|
| **Base Year** | 3/21/2025 | 3/20/2026 | 12 | $1,082,209.56 | $1,960,000.00 | $3,042,209.56 |
| **Option Year 1** | 3/21/2026 | 3/20/2027 | 12 | $1,082,209.56 | | $1,082,209.56 |
| **Option Year 2** | 3/21/2027 | 3/20/2028 | 12 | $1,082,209.56 | | $1,082,209.56 |
| **Option Year 3** | 3/21/2028 | 3/20/2029 | 12 | $1,082,209.56 | | $1,082,209.56 |

17. OFFICIALS NOT TO BENEFIT: No member or delegate to Congress or Resident Commissioner shall be admitted to any share or part of this moorage agreement or any benefit to arise there from, but this provision shall not be construed to extend to this moorage agreement if made with a corporation whose membership includes a member or delegate to Congress or Resident Commissioner who indirectly receives a general benefit from this moorage agreement.

18. AMENDMENT OR MODIFICATION: No amendment or modification shall be valid unless evidenced by an agreement in writing signed by both parties.

19. GOVERNING LAW: The parties shall construe the moorage agreement to be in accordance with and governed by the laws of the State of Alaska, insofar as those laws are consistent with applicable federal laws and regulations.

20. SEVERABILITY: If any term or provision of this moorage agreement is held invalid or unenforceable, the remainder of this moorage agreement shall not be affected thereby, and each term and provision hereof shall be valid and fully enforced permitted by law.

21. PAYMENTS OF TAXES AND ASSESSMENTS: The Government is not responsible for or liable for the payment of any real property taxes, personal taxes or assessments levied or assessed upon or against the rented moorage and dock space.

22. ENTIRE AGREEMENT: This moorage agreement, with attachment(s), constitutes the only agreement between Paradigm and the Government with respect to matters addressed herein. Any prior understanding or representation of any kind, which proceeded the date of this moorage agreement, are not binding on either party, except to the extent the understandings are incorporated into this moorage agreement.

23. MUTUAL AUTHORITY AND INTENT: Except as noted in this Section below, Paradigm and the Government represent and warrant to each other that they have full right, power and authority to enter into this moorage agreement without the consent or approval of any other entity or person and make these representations knowing that the other party will rely thereon. Furthermore, the signatories on behalf of Paradigm and the Government further represent and warrant that they have full right, power and authority to act for and on behalf of Paradigm and the Government in entering into this moorage agreement and do so with the mutual good faith intent to accomplish its stated aims as set forth in the Purpose above . If litigation is filed to determine and resolve the question of whether Matson's consent is required, the Coast Guard shall recommend intervenor action to the US Attorney Office for the District of Alaska, to support the validity and enforceability of this agreement and protect its interest and investment in the property If a court of competent jurisdiction renders a decision that has the effect of requiring Paradigm to seek the consent of or approval of a third party in order to validate this agreement, Paradigm shall:

1. Work with the Coast Guard and the third party to reach a consent agreement suitable to all parties so that the Coast Guard may complete its term of moorage as described within this agreement. If consent cannot be attained without material prejudice to Paradigm's rights under its existing lease; Paradigm may
2. Terminate the agreement and pay the Coast Guard 50% of all Tenant Improvement costs expended as of the date of the court order, but not more than $1,000,000. "Costs" include materials and labor out of pocket costs paid by the Coast Guard. The government's recoverable Costs under this provision shall be reduced by one-third on each anniversary of this agreement.

24. DEFAULT BY PARADIGM DURING THE TERM:

a. In addition to any right, remedy, or other basis the Government may have for terminating this moorage agreement, as provided elsewhere in this moorage agreement or by applicable law, each of the following shall constitute a default by Paradigm under this moorage agreement:

(1) Failure to maintain, repair, operate or service the moorage and dock space being rented, as and when specified in this moorage agreement, or failure to perform any other requirements of this moorage agreement, as and when required, provided any such failure shall remain uncured for a period of thirty (30) days following Paradigm's receipt of notice thereof from the Government.

(2) Repeated and unexcused failure by Paradigm to comply with one or more requirements of this moorage agreement shall constitute a default notwithstanding that all such failure shall have been timely cured pursuant to this clause.

b. This moorage agreement shall terminate in the event of any bankruptcy filing by Paradigm.

To the extent not in conflict with federal law, should any dispute arise between the parties hereto concerning any provision of this moorage agreement or the rights and duties of any person in relation thereto, the party prevailing in such dispute shall be entitled, in addition to such other relief that may be granted, to recover reasonable attorneys' fees and legal costs in connection with such dispute as determined by the judgment or award of any court or tribunal of competent jurisdiction.

25. MOORAGE AGREEMENT ADMINISTRATION AND PAYMENTS:

a. The following office shall administer this moorage agreement:

Commanding Officer
Civil Engineering Office Juneau
709 W. 9th St, Suite 817
Juneau, AK 99801

b. The following office processes moorage agreement payments:
US Coast Guard Finance Center
1430 Kristina Way
Chesapeake, VA 23326-1728

26.. TAX IDENTIFICATION: Government regulations require a tax identification number (TIN/SSN). Paradigm hereby certifies that the following TIN/SSN and telephone number are correct:

| | |
|---|---|
| TIN/SSN: | 35-2278317 |
| Telephone Number: | (954) 632-3677 |
| DUNS: | 82-859-0997 |
| Registered in SAM: | X Yes ____ No |
| SAM.GOV UEID | KP96PSSTD546 |
| SAM CAGE CODE | 585B5 |

3/ /25 ______________________________
Date Signature

28. PAYMENT BY ELECTRONIC FUNDS TRANSFER- SYSTEM FOR AWARD MANAGMENT:

a. Method of Payment; "contract" refers to this moorage agreement:

1) All payments by the Government under this contract shall be made by electronic fund transfer (EFT), except as provided in paragraph "a.2)" of this clause. As used in this clause, the term "EFT" refers to the funds transfer and may also include the payment information transfer.

2) In the event the Government is unable to make one or more payments by EFT, Paradigm agrees to either accept payment by check or some other mutually agreeable method of payment or request the Government extend the payment due date until such time as the Government can make payment by EFT (see paragraph "d." of this clause).

b. Paradigm EFT information. The Government shall make payment to Paradigm using the EFT information contained in the System for Award Management (SAM) database. In the event that the EFT information changes, Paradigm shall be responsible for providing the updated information to the SAM database.

c. Mechanisms for EFT payment. The Government may make payments by EFT through either the Automated Clearing House (ACH) network, subject to the rules of the National Automated Clearing House Association, or the Fedwire Transfer System. The rules governing Federal payments through the ACH are contained in 31 CFR part 210.

d. Suspension of payment. If Paradigm EFT information in the SAM database is incorrect, then the Government need not make payment to Paradigm under this contract until correct EFT information is entered into the SAM database; and any invoice or contract financing request shall be deemed not to be proper invoice for the purpose of prompt payment under this contract. The prompt payment terms of the contract regarding notice of an improper invoice and delays in accrual of interest penalties apply.

e. Paradigm's EFT arrangements. If Paradigm has identified multiple payment receiving points (i.e., more than one remittance address and/or EFT information set) in the SAM database, and Paradigm has not notified the Government of the payment receiving point applicable to this contract, the Government shall make payment to the first payment receiving point (EFT information set or remittance address is applicable) listed in the SAM database.

f. Liability for incomplete or erroneous transfer:

1) If an incomplete or erroneous transfer occurs because the Government used Paradigm's EFT information incorrectly, the Government remains responsible for making a correct payment, paying any prompt payment penalty due and recovering any erroneously directed funds.

2) If any incomplete or erroneous transfer occurs because Paradigm's EFT information was incorrect, or was revised within thirty (30) days of Government moorage agreement of the EFT payment transaction instruction to the Federal Reserve System, and if funds are no longer under the control of the payment office, the Government is deemed to have made payment and Paradigm is responsible for recovery of an erroneously directed funds or if the funds remain under the control of the payment office, the Government shall not make payment, and the provisions of paragraph "d" of this clause shall apply.

g. EFT and prompt payment. A payment shall be deemed to have been made in a timely manner in accordance with the prompt payment terms of this contract if, in the EFT payment transaction instruction moorage agreement to the Federal Reserve System, the date specified for settlement of the payment is on or before the prompt payment due date, provided the specified payment date is a valid date under the rules of the Federal Reserve System.

h. EFT and assignment claims. If Paradigm assigns the proceeds of this contract, Paradigm shall require as a condition of any such assignment, that the assignee shall register separately in the SAM database and shall be paid by EFT in accordance with the terms of this clause. In all respects, the requirements of this clause shall apply to the assignee as if it were Paradigm. EFT information that shows the ultimate recipient of the transfer to be other than Paradigm, in the absence of proper assignment of claims acceptable to the Government, is incorrect EFT information within the meaning of paragraph "d" of this clause.

i. Liability for change to EFT information by financial agent. The Government is not liable for errors resulting from changes to EFT information made by Paradigm's financial agent.

j. Payment information. The payment or disbursing office shall forward to Paradigm available payment information that is suitable for transmission as of the date of moorage agreement of EFT instruction to the Federal Reserve System. The Government may request Paradigm to designate a desired format and method(s) for delivery of payment information from a list of formats and methods the payment office can execute. However, the Government does not guarantee that any format or method of delivery is available at any payment office and retains the latitude to use the format and delivery method most convenient to the Government. If the Government makes payment by check in accordance with paragraph "a" of this clause, the Government shall mail the payment information to the remittance address contained in the SAM database.

29. CLAUSES INCORPORATED BY REFERENCE. This moorage agreement incorporates one or more clauses by reference with the same force and effect as if they were given in full text. The full text may be found in GSA Form 3517B (Rev. 6/2023), and the following clauses are incorporated by reference:

| **GSA Form 3517B Clause Number** | **48 CFR Reference** | **Clause Title** |
|---|---|---|
| 3 | 552.270-23 | SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT |
| 4 | 552.270-24 | STATEMENT OF LEASE |
| 5 | 552.270-25 | SUBSTITUTION OF TENANT AGENCY |
| 6 | 552.270-26 | NO WAIVER |
| 8 | 552.270-28 | MUTUALITY OF OBLIGATION |
| 9 | -- | DELIVERY AND CONDITION |
| 10 | -- | DEFAULT BY LESSOR |
| 17 | 52.204-7 | SYSTEM FOR AWARD MANAGEMENT |
| 18 | 52.204-13 | SYSTEM FOR AWARD MANAGEMENT MAINTENANCE |
| 19 | 552.270-31 | PROMPT PAYMENT |
| 20 | 552.232-23 | ASSIGNMENT OF CLAIMS |
| 21 | | PAYMENT |
| 24 | 552.270-32 | COVENANT AGAINST CONTINGENT FEES |
| 28 | 552.270-30 | PRICE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY |
| 30 | 552.270-13 | PROPOSALS FOR ADJUSTMENT |
| 31 | -- | CHANGES |
| 34 | 52.233-1 | DISPUTES |
| 35 | 52.222-26 | EQUAL OPPORTUNITY |
| 36 | 52.222-21 | PROHIBITION OF SEGREGATED FACILITIES |
| 38 | 52.222-35 | EQUAL OPPORTUNITY FOR VETERANS |
| 39 | 52.222-36 | EQUAL OPPORTUNITY FOR WORKERS WITH DISABILITIES |
| 40 | 52.222-37 | EMPLOYMENT REPORTS ON VETERANS |

**IN WITNESS WHEREOF**, the parties hereto have hereunto subscribed their names as of the date first above written.

| PARADIGM MARINE, LLC | |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME OF SIGNER<br>NICKIE SUTHERLIN, MGRM | NAME OF SIGNER |

| IN PRESENCE OF | |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME OF SIGNER | NAME OF SIGNER |

| UNITED STATES OF AMERICA | |
|---|---|
| SIGNATURE<br>Digitally signed by BRUMLEY.DAVID.E.1174104758<br>Date: 2025.03.21 16:41:03 -07'00'<br>Real Estate Contracting Officer<br>US Coast Guard | NAME OF SIGNER<br>David E. Brumley<br>OFFICIAL TITLE OF SIGNER<br>USCG Real Estate Contracting Officer<br>United States Coast Guard |